**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| PAMELA BALLBACK | * | CIVIL ACTION NO. 08-0343 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Pamela Ballback, born June 26, 1963, filed an application for a period of disability and disability insurance benefits on February 15, 2005, alleging disability as of February 15, 2005, due to obesity, diabetes, diabetic peripheral neuropathy, degenerative arthritis, fasciitis of the feet, mild anterial septal defect, and status-post meniscectomy of the knees.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant

was not disabled.  However, I recommend that this matter be remanded for further administrative action, based on the following:

**(1) Records from Park Place Surgery dated August 18, 2004 to September 28, 2004**.  Claimant was involved in a work-related injury in which she sustained right knee pain.  (Tr. 169, 238).  Dr. Thomas Montgomery's impression was rule out mensical tear, mild osteoarthritis of the right knee with exacerbation.  (Tr. 239).  He performed a diagnostic arthroscopy of the right knee with partial lateral meniscectomy and chondroplasy of the medial femoral condyle on September 28, 2004.  (Tr. 169).

**(2) Records from Our Lady of Lourdes Hospital dated December 17, 2004 to January 18, 2005**.  Claimant had plantar fasciitis of the right foot.  (Tr. 211).  James A. Noriega, DPM, performed an endoscopic plantar fasciotomy of the right foot on December 17, 2004.

**(3) Records from Dr. David Sisam dated November 17, 2003 to February 14, 2005**. Dr. Sisam treated claimant for thyroid problems, diabetes, and foot neuropathy.  (Tr. 215-21).  She was instructed to diet and lose weight, and was prescribed medications for diabetes and thyroid.  (Tr. 215).

**(4) Records from Deidre Stelly dated January 13, 2004 to December 9, 2004**.  An MRI of the right knee dated August 13, 2004, showed moderate lateral

subluxation of the patella, degenerative arthritis at the knee joint with some degeneration of the lateral meniscus suggested and vertical tear through the posterior horn of the lateral meniscus at its free margin, and moderately-sized knee joint effusion. (Tr. 232). Claimant's assessment was right knee pain, status-post fall. (Tr. 228). She complained of dizzy spells and occasional nausea on November 14, 2004. (Tr. 226).

On December 9, 2004, claimant's assessment was plantar faciitis, diabetes mellitus, hyperlipidemia, hypothyroid, and depression. (Tr. 223). She was referred to Dr. Sisam for diabetes mellitus control.

**(5) Report from Dr. Fabian Lugo dated July 7, 2004**. Claimant presented with pain in the right heel for at least a couple of years. (Tr. 235). She had been diagnosed with diabetic neuropathy affecting her legs, for which she was taking Neurontin three times a day. Her past medical history included depression, diabetes mellitus, heart problems, hypothyroidism for which she was on Synthroid, and right carpal release surgery. Her medications included Celebrex, Allegra, Neurontin, Synthroid, Lasix, Lantus insulin, Zoloft, and Zocor.

On examination, claimant's blood pressure was 140/100. (Tr. 236). She was 5 feet 1 inch tall, and weighed 252 pounds.

On mental exam, claimant was alert, cooperative, and oriented. Her spontaneous speech was fluent and well-articulated with no aphasia. Her affect was appropriate.

On motor exam, claimant's tone and bulk were normal. Muscle group strength testing was normal in the extremities. Deep tendon reflexes were +1 and symmetrical throughout, except for absent ankle jerks. Sensation was intact.

The right heel was painful to pressure. Claimant favored the right leg because of pain in the foot.

Dr. Lugo's impression was chronic pain in the right heel area. He stated that focal neuropathy of the calcaneal branch of the tibial nerve could not be excluded versus a localized fasciitis at the heel area. He recommended Ultracet for pain and samples of a Lidoderm patch. He discussed the importance of good blood sugar control.

**(6) Records from Lafayette General Hospital dated January 2, 2005 to March 14, 2005**. Claimant was admitted for cellulitis of the right heel on January 2, 2005. (Tr. 241). She was discharged on January 5, 2005. Her prognosis was excellent.

**(7) Report from Dr. Louis Blanda dated December 16, 2004**. Claimant was initially seen on August 19, 2003, for left knee pain. (Tr. 246). She returned

on December 16, 2004, with knee pain which increased with activity. On examination, she had crepitus of the left knee. Range of motion was good. X-rays of the left knee showed degenerative changes. She was prescribed Celebrex. (Tr. 247).

**(8) Report from Dr. Y. Jeffrey Chen dated March 15, 2005**. Claimant reported symptoms of dyspnea and chest pain intermittently. (Tr. 248). Nuclear stress testing showed mild anterior septal defect. There was no definite stress-induced ischemia. An echocardiogram showed normal left ventricular function with mild mitral regurgitation and moderate tricuspid regurgitation.

**(9) Residual Functional Capacity Assessment ("RFC") – Physical (undated)**. The examiner determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 250). She could stand/walk and sit about six hours in an eight-hour workday. She had unlimited push/pull ability.

Claimant had no functional limitations from sleep apnea other than routine seizure precautions. (Tr. 250). The projected RFC was due to the recency of her fasciotomy.

Claimant had occasional postural limitations, except that she could never climb ladders, ropes, or scaffold. (Tr. 251). She was to avoid all exposure to hazards, such as machinery and heights. (Tr. 253). The examiner determined that

5

although claimant's sleep apnea might cause her trouble staying awake, she should be able to perform some types of work with routine seizure precautions. (Tr. 254).

**(10) Records from Dr. James A. Noriega dated January 31, 2005 to August 9, 2005**. On March 3, 2005, culture results showed staph aureus in the right heel. (Tr. 270). Claimant was placed on Cleocin.

On May 10, 2005, claimant was doing very well, but was still having some soreness. (Tr. 268). Dr. Noriega recommended physical therapy.

On August 9, 2005, claimant continued to have pain in her heels. Dr. Noriega recommended orthotics, which was the only thing that would get her better because of her weight.

**(11) Records from Dr. Louis C. Blanda, Jr. dated April 14, 2005 through January 5, 2006**. Claimant complained of left knee pain. (Tr. 277). An MRI showed a bony contusion of the medial femoral condyle and a torn lateral meniscus. She had a left knee arthroscope and meniscectomy on October 19, 2005. (Tr. 279).

On December 8, 2005, claimant complained that she still had some pain in the patellar tendon. (Tr. 281). It occasionally gave out. She had mild swelling and tenderness. Dr. Blanda recommended physical therapy and prescribed Tylox.

**(12) Consultative Orthopedic Examination by Dr. Stephen W. Wilson dated June 23, 2006**. Claimant complained of difficulties with her knees, ankles, and feet for three years. (Tr. 288). She had had a problem with her weight. Her left knee gave her the most difficulty, particularly after long periods of standing.

Additionally, claimant complained of pain in the feet, mainly in the right heel. She had developed diabetes and neuropathy secondary to the diabetes. She complained that her legs became extremely tired and weak when she ambulated.

On examination, claimant was 5 feet tall and weighed 240 pounds. She had good range of motion in the joints of the lower extremities. She had pain along the medial and lateral joints of both knees. She had no evidence of any ligamentous instability or torn cartilage of the knees. She had pain in both ankles and beneath the heels.

Claimant reported intermittent tingling in the toes. (Tr. 289). She had good range of motion in the ankle joints and toes, and good dorsiflexion of the great toes.

X-rays showed mild degenerative arthritis in the knees with some narrowing in the medial compartment. Foot x-rays revealed minimal degenerative arthritis in the carpal joints. She had metatarsus prima varus and very small calcaneal spurts bilaterally.

Dr. Wilson's impression was mild degenerative arthritis in claimant's knees, fascitis of the feet, and mild degenerative arthritis in her feet. He recommended that she start a weight reduction program, and take anti-inflammatory medication for her arthritis.

Dr. Wilson opined that claimant could return to some form of gainful occupation if she were motivated to do so. He stated that she could return to work where she did not have to lift more than 30 pounds or 15 pounds on a regular basis; could do only occasional bending, stooping, crawling, or climbing, and did not have to stand or ambulate more than two hours a day. He concluded that "Motivation will have a great deal to do with when and if this patient decides to return to any form of gainful activity."

In the Medical Source Statement of Ability to do Work-Related Activity (Physical), Dr. Wilson opined that claimant could lift/carry 25 pounds occasionally and 10 pounds frequently. (Tr. 290). She could stand/walk at least two hours in an eight-hour workday. She had no impairments as to sitting or pushing/pulling. (Tr. 291). She had occasional postural limitations. She had no manipulative, visual, communicative, or environmental limitations. (Tr. 292-93).

**(13) Request for records from Dr. David Sisam dated September 20, 2006**. Disability Determinations Services requested records from 2/05 to 2/05.

8

(Tr. 294). No new records were provided.

**(14) Consultative Report from Mark Dawson dated November 13, 2006.**
Claimant presented with hypothyroidism, Type II diabetes, arthritis, anemia, depression, and sleep apnea. (Tr. 295). She was taking Lasix, Lantus insulin, and Actos. She had prescriptions for Celebrex, Zocor, Altace, Neurontin, Zoloft, Synthroid and Elavil, but stated that she could not afford them.

Claimant complained of numbness in her legs and difficulty walking. She reported tingling pain in her legs, which was treated with Neurontin. She also stated that she had cramps to the soles of her feet and fingers. Additionally, she said that she had depression.

On examination, claimant was 5 feet 1 inch tall, and weighed 239 pounds. Her blood pressure was 130/80. Her mental status was normal. (Tr. 296).

Claimant's abdomen was obese. Her heart had regular rate and rhythm without murmur. Pulses were 2+ bilaterally.

Claimant walked with a noticeable limp with both legs. She stated that her knees and feet hurt. She could not walk on her tip toes. She could walk on her heels, but with difficulty. She could normally walk, but hobbled on both legs.

Dr. Dawson's assessment was diabetes mellitus, peripheral neuropathy, a history of hypothyroidism, and a history of depression.

In the Medical Source Statement of Ability to do Work-Related Activities, Dr. Dawson found that claimant could lift/carry less than 10 pounds occasionally and frequently; stand/walk less than two hours in an eight-hour workday; had no impairment as to sitting, pushing/pulling; could never climb, balance, kneel, crouch, or crawl, and was limited as to vibration due to peripheral neuropathy. (Tr. 297-99).

**(15) Records from Our Lady of Lourdes dated August 15, 2003 to December 29, 2003**.[1] Claimant was diagnosed with obstructive sleep apnea with excessive daytime sleepiness, and sleepiness secondary to Neurontin, Allegra, and Zoloft. (Tr. 310). She was instructed to lose weight. Dr. Janardana P. Kaimal stated that claimant's obstructive sleep apnea was adequately controlled with 10 cm of CPAP. (Tr. 314).

**(16) Claimant's Administrative Hearing Testimony**. At the hearing on September 5, 2006, claimant proceeded without a representative. (Tr. 43). The ALJ explained claimant's right to a representative, and confirmed that claimant had signed a waiver prior to the hearing. (Tr. 43-44, 98). She also informed claimant that she could obtain a representative free of charge or on a contingency basis. (Tr. 44). However, claimant stated that she did not want to postpone the

---

[1] These records were submitted to the Appeals Council.

hearing to obtain a representative. (Tr. 44-45). The claimant also signed a post-hearing waiver. (Tr. 45, 97).

Claimant testified that she was 43 years old. (Tr. 48). She stated that she was 5 feet 1 inch tall, and weighed 232 pounds. (Tr. 49). She was a high school graduate.

Claimant had worked through March 4, 2005. She had been employed at Diamond Shamrock for 15 years, and had been a manager for 10 years. (Tr. 50). She stated that she had quit working because of foot and knee problems. (Tr. 51).

Additionally, claimant complained of knee pain, primarily in her left knee. (Tr. 52). She also said that she was a diabetic with pedal neuropathy, plantar fasciitis, and sleep apnea. She stated that she slept with a machine at night. She reported that she was taking insulin and pills for diabetes. (Tr. 52-53).

Claimant stated that she did not have heart problems. (Tr. 53). She complained of some depression. (Tr. 54). She also reported having arthritis in her knees. (Tr. 54).

Regarding restrictions, claimant testified that she had trouble walking because of knee problems. (Tr. 62). She had no problems with her hands. (Tr. 63). She stated that she had numbness and tingling in her feet because of neuropathy.

As to medications, claimant testified that she took Tylenol for pain, diabetes medication, blood pressure medication, a fluid pill, cholesterol medicine, thyroid medication, and Neurontin. (Tr. 67, 69). She reported that the Neurontin helped her feet a lot. (Tr. 69).

Regarding activities, claimant testified that she cooked, cleaned, did laundry, and grocery shopped. (Tr. 65). She bathed and dressed herself. She could lift bags of groceries if they were not too heavy. (Tr. 66). She was able to drive.

Additionally, claimant testified that she visited with her stepchildren and her sister. She attended church. She also played bingo, watched television, and did crossword puzzles. (Tr. 67).

The ALJ stated that she was going to send claimant for an evaluation regarding diabetic neuropathy. (Tr. 63-64, 67). However, when claimant said that she already had an appointment to see Dr. Sisam that month, the ALJ said that Dr. Sisam could test for the status part of the neuropathy under Section 9.08(a).[2] (Tr. 68). The ALJ left the record open for 40 days for a consultative examination. (Tr. 76).

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §9.08.

**(17) Administrative Hearing Testimony of Lionel Bordelon, Vocational Expert ("VE")**. Mr. Bordelon described claimant's past work as a cashier/checker as light with an SVP of 3, and a retail store manager as medium with an SVP of 7. (Tr. 69-70). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education, and work history; with the ability to lift/carry 10 to 20 pounds occasionally; stand, walk, and sit for six hours; occasionally stoop, crouch, crawl, squat, kneel, and balance; occasionally climb stairs; could not climb ladders or scaffolds; could not be around dangerous heights, and could have only limited exposure to dust, fumes, and gases. (Tr. 70, 72). In response, Mr. Bordelon testified that claimant could work as a sales counter clerk, of which there were 97,171 positions available nationally and 1,507 statewide, 30% the same; sales support, of which there were 80,198 positions nationally and 1,450 statewide, and weighers, measurers, or checkers, of which there were 72,321 positions nationally and 997 statewide. (Tr. 72-73). Mr. Bordelon used the census code for these job descriptions.

When the ALJ incorporated the modifications found by Dr. Wilson to assume a claimant who was limited to lifting 15 to 30 pounds; standing and walking for two hours a day; sitting for six hours a day, and only occasional bending, stooping, crawling, or climbing, the VE stated that she could still

perform sales support type of occupations, of which there were 80,198 sedentary positions nationally and 1,450 statewide. (Tr. 74). In the third hypothetical, when the ALJ asked Mr. Bordelon to assume that all of claimant's impairments to which she had testified existed, he opined that no jobs would be available. (Tr. 75).

**(18) The ALJ's Findings are Entitled to Deference**. Claimant argues: (1) the Appeals Council erred in failing to properly consider the new and material evidence submitted by claimant; (2) the SSA/DDS erred in failing to comply with their own regulations with regard to recontacting the treating source, and (3) the ALJ erred in relying on the VE's testimony in finding claimant not disabled at Step 5, or alternatively, the ALJ erred in applying the Medical-Vocational Guidelines to find claimant not disabled in light of her significant non-exertional limitations. Because I find that the ALJ failed to fully evaluate claimant's sleep apnea combined with the side effects from her medications, I recommend that this case be **REMANDED** for further proceedings.

As to the first argument, claimant submitted new evidence to the Appeals Council consisting of records dated August, 2003 through December, 2003, relating to her sleep apnea with excessive daytime sleepiness secondary to Neurontin, Allegra, and Zoloft. [rec. doc. 7, pp. 2-4]. When new evidence becomes available after the Secretary's decision and there is a reasonable

possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

In this case, the new evidence regarding claimant's sleep apnea dates back to 2003. (Tr. 307-17). As the ALJ noted, claimant had complained about sleep apnea to Dr. Dawson. (Tr. 295). However, the ALJ discounted this complaint because there were no medical records to support it. (Tr. 23).

Subsequently, claimant presented records to the Appeals Council indicating that she had been diagnosed with obstructive sleep apnea with excessive daytime sleepiness, and sleepiness secondary to Neurontin, Allegra, and Zoloft. (Tr. 310).

Claimant testified at the hearing that she was taking several medications, including Neurontin, yet the ALJ failed to address the side effects in her decision. (Tr. 69). Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)). This constitutes error.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to obtain a consultative evaluation on claimant's impairments of sleep apnea and daytime sleepiness secondary to medications, as well as any other side effects from claimant's medications. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** ***DOUGLASS V. UNITED***

***SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed March 25, 2009, at Lafayette, Louisiana.

 _____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE